cal_____

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Russell Harold Miller, | ) | Civil No.05cv1740 WQH (AJB) |
| | ) | |
| Petitioner, | ) | |
| v. | ) | Report and Recommendation Denying |
| | ) | Petitioner's Habeas Corpus Petition |
| James Yates, et al., | ) | [Docket No. 17 and 28] |
| | ) | |
| Respondent. | ) | |
| | ) | |

    Petitioner, Russell Harold Miller, a state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus [hereinafter "Petition"] pursuant to 28 U.S.C. § 2254. [Docket No. 1]. He is challenging the sentence for his November 22, 2000 conviction in San Diego Superior Court, Case No. SCD151170, alleging ineffective assistance of counsel. Petitioner was convicted of three counts of robbery and was given an indeterminate sentence of seventy-five years to life with an additional ten year determinate term for priors. Respondent filed an Answer to Petitioner's Habeas Corpus Petition [hereinafter "Answer"] in accordance with Rule 5 of the Rules Governing section 2254 cases in the United States District Court [Docket No. 17, 18].  Petitioner filed a Traverse [Docket No. 28].  Based upon a review of the moving papers and for the reasons set forth herein, it is recommended that Petitioner's Habeas Corpus Petition be **DENIED**.

///

///

***Procedural History***

Petitioner was convicted by a jury on November 22, 2000 in San Diego Superior Court, Case No. SCD151170 for three counts of robbery (Cal. Penal Code § 211). [Lodgement 1 at 102-103.1].   On November 27, 2000 the Court made  true findings as to two serious felony allegations (Cal. Penal Code §§ 667(a)-(I), 688, and 1192.7(c)) and twenty-two strike prior allegations (Cal. Penal Code §§ 667 (b)-(I), 688, and 1170.12). [Lodgement 1, at 1-5, 102-103.1, 377; Lodgement 2, at 482-483; Lodgement 3, at 12]. Petitioner was sentenced on October 18, 2001 to a indeterminate term of seventy-five years to life for the three robbery convictions with an additional ten year determinate term for his priors. [Lodgement 1, at 342; Lodgement 6, at 12].

Petitioner appealed his conviction to the California Court of Appeal, Fourth Appellate District, Division One, claiming (1) that the trial court abused its discretion by denying Petitioner's motion for a new trial based on ineffective assistance of counsel. [Lodgement 7].  Petitioner further filed a supplemental brief to the California Court of Appeal claiming that there was insufficient evidence to support his conviction. [Lodgement 8].  Petitioner's appeal was denied on September 10, 2003. The Court found that there was substantial evidence to sustain Petitioner's conviction and that the trial court properly denied his motion for new trial because his counsel did not provide ineffective assistance. [Lodgement 11].

Petitioner then filed a petition for review in the California Supreme Court raising the same two arguments as he did on direct appeal. [Lodgement 12].  The Court denied his petition on November 19, 2003. [Lodgement 13].

Petitioner filed a Writ of Habeas Corpus in the California Supreme Court.  On September 22, 2004 California Supreme Court denied the writ, stating in full, "Petition for writ of habeas corpus is DENIED. (See *In re Lindly* (1947) 29 Cal. 2d 709; *In re Walreus* (1965) 62 Cal. 2d 218; *In re Dixon* (1953) 41 Cal. 2d 756; *In re Swain* (1949) 34 Cal. 2d 300, 304; *People v. Duvall* (1995) 9 Cal. 4th 464, 474; *In re Dixon* (1953) 41 Cal. 2d 756)." [Lodgement 15]. In his petition, Petitioner argued that: (1) he was actually innocent, (2) his conviction resulted from misidentification, (3) the trial court erred by denying his request for a new trial based upon newly discovered evidence, and (4) he was denied a fair trial when the jury learned of his parole status. [Lodgement 14].

///

2

The instant habeas corpus petition [Docket No. 1] was filed on September 7, 2005 and raises ineffective assistance of counsel as the only ground for review.  Petitioner contends that his trial counsel was ineffective by (1) failing to employ an identification expert, (2) failing to introduce a motel receipt to corroborate his alibi defense, (3) failing to prevent the jury from learning of his parol status, and (4) failing to investigate and present evidence of third-party culpability.

### ***Factual Background***

Petitioner was convicted of three robberies of mini-markets in San Diego on February 26, 27 and 28 of 2000. [Lodgement 1 at 1-5, 102-103; Lodgement 2 at 482-483].  A factual summary of the robberies, investigation and trial pertinent to the discussion is as follows:

On February 26, 2000, at approximately 4:00 a.m. Petitioner robbed an Arco AM/PM mini-market located on El Cajon Boulevard.  Petitioner pointed a silver/chrome handgun at the cashier and demanded the cash in the register.  Petitioner took $240-250 in cash from the register, placed it in his pocket and left. [Lodgement 2 at 85, 156-170].

On February 27, 2000, at approximately 4:00 a.m. Petitioner robbed a separate Arco AM/PM mini-market located on Euclid Avenue taking just over $100 from the cash register. Again Petitioner brandished a silver/chrome handgun. [Lodgement 2 at 85, 219-233].

On February 28, 2000, approximately between the hours of  7:00 to 8:00 a.m. Petitioner robbed an Exxon gas station mini-market located on Euclid Avenue taking $346 and a Kit-Kat candy bar after showing the clerk his silver/chrome handgun. [Lodgement 2 at 78, 119-123].

Ten to fifteen minutes after the February 28, 2000 robbery, the Petitioner was stopped by an officer as he drove a car less then three miles from the robbery. [Lodgement 2 at 78-79, 123].  Upon searching the car, the officer found clothing that matched the description of the alleged robber as well as finding approximately $327 in the pocket of the Petitioner. [Lodgement 2 at 82].  The officer took the Petitioner into custody "for his parole violation and for a misdemeanor warrant which was in the system on him . . . and he was detained for the robbery." [Lodgement 11 at 15 fn.7].  Petitioner was then identified by the cashier of the Exxon mini-market as the person who had robbed the store. [Lodgement 2 at124-126].

///

05cv1740

1    Police officers conducted a search of the Petitioner's girlfriend's home which was less then three

2    miles from the third robbery.  In the home the officers found a replica gun matching the description of

3    the one used in the robberies as well as a Kit-Kat candy bar wrapper which had a price tag used by the

4    Exxon mini-market. [Lodgement 2 at 252-265].

5    Police officers also recovered video surveillance tapes from each of the robberies that were used

6    to identify the Petitioner as the robber. [Lodgement 2 at 156-170, 219-233, 119-123].

7    Petitioner was first represented by the San Diego County Public Defender's office.  The Deputy

8    Public Defender assigned to the case, believed that the police were investigating two distinct robbery

9    sprees in the area, that may be related, and that one of the suspects being examined by the police had

10   been or was currently being represented by his office.  Believing that he may be able to use a third-party

11   culpability defense in the current action, the Deputy Public Defender removed himself from the case

12   because such a defense could jeopardize a former or current client.  (As was later discovered by

13   Petitioner's hired counsel, no such third-party was being investigated by the police.) [Lodgement 11 at

14   12-13].

15   Petitioner then hired trial counsel.  At trial, several prosecution witnesses positively identified

16   the Petitioner as the person who robbed the stores.  The prosecution witnesses relied on eyewitness

17   accounts, live lineup identifications, in-court identifications as well as identifications made from the

18   video and still photo evidence. [Lodgement 2 at 156-170, 219-233, 119-123].

19   Petitioner's counsel relied on one witness, Petitioner's girlfriend, Ms. Samuels.  Ms. Samuels

20   testified that she and the Petitioner stayed in a motel on the nights of the first two robberies (February 26

21   and 27) and at no time did the Petitioner leave her side.  She further testified that the Petitioner spent the

22   night of the third robbery (February 28) in a shed behind her house. [Lodgement 2 at 319-323].

23                                       ***Legal Standard***

24   **I.      Standard of Review**

25   A state court's finding of fact are presumed correct. 28 U.S.C. §2254(e)(1). The burden is on the

26   Petitioner to rebut this presumption by clear and convincing evidence. *Id*.  Applying the deferential standard

27   of review of federal habeas corpus petitions which was established by the Antiterrorism and Effective Death

28   Penalty Act of 1996 (AEDPA), U.S.C. §2254(d), a petition may only be granted if claims adjudicated on

                                              4

the merits by the state court resulted in a decision which was contrary to, or involved an unreasonable application of clearly established federal law as decided by the Supreme Court of the United States or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C.A. §2254(d) (2002).

### A.    Contrary To and Unreasonable Application of Clearly Established Federal Law

A state court's decision is contrary to clearly established federal law if the state court applies a rule that contradicts governing law set forth in United States Supreme Court cases, or the state court decides the instant case differently than a precedent United States Supreme Court case which has nearly indistinguish-able facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Additionally, a state court's application of precedent United States Supreme Court cases is unreasonable if the court correctly identifies governing United States Supreme Court precedent, but applies the precedent unreasonably to the instant case. *Id.* at 407. The state court's application of precedent is further considered unreasonable if it inappropriately extends Supreme Court precedent in new contexts where it should not apply . . . or the state court does not appropriately apply precedent to contexts where it should apply. *Id*; *Van Tran v. Lindsey*, 212 F.3d 1143, 1150 (9th Cir. 2000).

### B.    Unreasonable Determination of the Facts

"Factual determinations by state courts are presumed to be correct absent clear and convincing evidence to the contrary." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). A state court's adjudication is an unreasonable determination of the facts or an unreasonable application of law if, after independent review, the reviewer is left with the firm conviction that the position rejected by the state court was the correct position and the one adopted is incorrect. *Van Tran*, 212 F.3d at 1153-54; *Torres v. Prunty*, 223 F.3d 1103, 1107-1108 (9th Cir. 2000). However, when a state court applies a general legal principle, its decision will not be deemed objectively unreasonable if it "fits within the matrix" of prior Supreme Court decisions, even if "fair minded jurists" could disagree on the merits. *Yarborough v. Alvarado*, 541 U.S. 652, 655 (2004).

### C.    Look Through Doctrine

"Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding the judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*,

501 U.S. 797, 803-804 (1991).  In the instant case, the California Supreme Court denied the Petitioner's appeal silently. [Lodgement 13].  By doing so, the Court must look through that decision to the last reasoned opinion of the California Court of Appeal to determine whether that Court's decision was contrary to or unreasonable application of clearly established federal law.

**II.     United States Supreme Court Precedent: Ineffective Assistance of Counsel**

Ineffective assistance of counsel issues are controlled by the United States Supreme Court decision in *Strickland v. Washington*, 466 U.S. 668 (1984). *Bell v. Cone*, 535 U.S. 685 (2002). *Strickland* sets out a two-prong test for ineffective assistance of counsel claims.  The burden is on the defendant to show (1) counsel's representation fell below an objective standard of reasonableness based on all the circumstances of the case and considered under prevailing professional norms and (2) the deficiencies prejudiced the defense. *Strickland*, 466 U.S. at 687.

### A.     Reasonableness

The proper inquiry for reasonableness of the trial counsel's performance is whether the choices that counsel made were, from trial counsel's own perspective, reasonable at the time. *Strickland*, 466 U.S. 689; see also, *Babbitt v. Calderon*, 151 F. 3d. 1170, 1163 (9th Cir. 1998).  It is not an inquiry into what defense counsel could have done differently. *Id*.  The court should consider trial counsel's decisions with a strong presumption that trial counsel's actions resulted from sound strategy and attempt to eliminate the use of hindsight. *Id*.

### B.     Prejudice

To establish prejudice, defendant must show that the outcome of the case would have been different had the trial counsel's errors not occurred. *Strickland,* 466 U.S. at 694.  Counsel's errors must rise to the level of depriving the Petitioner of a fair trial. See *Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Additionally, when lack of prejudice is sufficient to dispose of the ineffective assistance of counsel claim, the court need not evaluate the trial counsel's performance for deficiency. *Id* at 668.

### *Discussion*

In the instant Petition, Petitioner argues that he received ineffective assistance of counsel, denying him his right to a fair trial.  Petitioner contends that his trial counsel (1) failed to employ an identification expert, (2) failed to introduce a motel receipt to corroborate his alibi defense, (3) failed to prevent the jury

1   from learning of his parol status, and (4) failed to investigate and present evidence of third-party culpability.

2   [Petition at Subdivision (a)-(d)].  Specifically, Petitioner argues his trial counsel's failures, individually and

3   cumulatively, amount to ineffective assistance of counsel in violation of his Sixth and Fourteenth

4   Amendment rights. [Petition].  Following AEDPA, the relevant discussion is not whether the counsel was

5   ineffective, but rather whether the state court determination on the issue was contrary to or an unreasonable

6   application of clearly established federal law.

7       Each of Petitioner's contentions of ineffective assistance of counsel will be discussed in turn to

8   determine whether the California Court of Appeal, the last court to opine on the matter, followed the

9   guideline of *Strickland* and thereby came to a decision that is not contrary to or an unreasonable application

10  of clearly established federal law.

11  **I.    Failure to Retain an Eyewitness Expert Was Not Contrary To Or An Unreasonable**

12  **Application Of *Strickland***

13      Petitioner claims that the failure of his counsel to call an eyewitness identification expert deprived

14  him of his right to effective assistance of counsel.  Specifically, Petitioner claims the availability of an

15  identification expert could have influenced the jury in regards to effects of curb-side identifications,

16  subsequent identifications, as well as the probative nature of a live lineup versus an in-court identification.

17  [Petition at Subsection (a)].  As previously stated, under the *Strickland* rule, the burden rests with the

18  Petitioner to show that counsel's representation fell below an objective standard of reasonableness based

19  on all the circumstances of the case and considered under prevailing professional norms and the deficiencies

20  prejudiced the defense. *Strickland*, 466 U.S. at 687.

21      Petitioner's counsel was aware that experts were available.[1]  However, counsel determined that the

22  best tactical action was to attack the eyewitnesses directly on cross-examination "on factors that would have

23  undermined the reliability of their identifications." [Lodgment 11 at 9].  According to the record and as

24  recognized by the Court of Appeal, Petitioner's counsel did indeed attack the witnesses on cross-

25  examination, as well as raising the issue during closing arguments, and successfully introducing jury

26  instructions that instruct on "factors to guide resolution of its assessment of the eyewitness testimony."

27  _____

28      [1]As noted in the California Court of Appeal decision, Petitioner's second trial counsel was aware that his first counsel had hired an expert, but declined to use such an expert.  See Lodgement 11 at 9.

1   [Lodgement 11 at 10].  The Court of Appeal concluded that Petitioner had not meet either prong of the

2   *Strickland* test by stating,

3   > "Because Noble [Petitioner's counsel] did not make the decision whether to use the expert in a
   > vacuum, and there was nothing extraordinary or remarkable about the eyewitness identification to

4   > support a conclusion it was reasonably probable that Miller [Petitioner] would have benefitted from
   > an expert's opinion. . . We need not reach the issue of whether this decision was below the range of

5   > reasonable professional assistance because we are convinced there is not a reasonable probability
   > Miller [Petitioner] would have received a more favorable result had an expert been used at trial."

6   > [Lodgement 11 at 9-10].

7   Moreover, the eyewitness evidence against the Petitioner was corroborated with other evidence that

8   created the nexus to connect the Petitioner to the crimes charged.  As the Respondent correctly summarized,

9   the corroborated evidence includes: surveillance videotapes from the robberies, still images lifted from the

10  tapes, the cash found in the Petitioner's pocket in an amount similar consistent with the cash taken from a

11  robbery, the cloths found in the Petitioner's car which matched the description of the would-be robber, and

12  the physical evidence found at the Petitioner's girlfriend's house (including the replica gun, a candy wrapper

13  that was similar to one taken in one of the robberies, clothes matching the one's identified in one robbery.)

14  [Answer at 11-12].

15  By properly applying the *Strickland* standard to this set of facts, it must be concluded that the

16  decision was not contrary to or an unreasonable application of federal law.  The decision by the Court of

17  Appeal was consistent with the application of *Strickland* and therefore, Petitioner's claim of ineffective

18  assistance of counsel based on failure to introduce an expert must be DENIED.

19  **II.   Failure To Introduce Motel Receipt Into Evidence Was Not Contrary To Or An Unreasonable**

20  **Application Of *Strickland***

21  Petitioner claims his counsel was ineffective by failing to introduce corroborating evidence

22  supporting his sole witness's testimony.  Under the *Strickland* standard, the proper inquiry for reasonable-

23  ness of the trial counsel's performance is whether the choices that counsel made were, from trial counsel's

24  own perspective, reasonable at the time. *Strickland*, 466 U.S. 689.  The court should consider trial counsel's

25  decisions with a strong presumption that trial counsel's actions resulted from sound strategy and attempt

26  to eliminate the use of hindsight. *Id*.

27  The motel receipt presented information that Petitioner's witness (Ms. Samuels) had stayed at the

28  motel for one night.  This information did not necessarily aid in the Petitioner's defense or fully corroborate

the testimony of Ms. Samuels.  Petitioner's witness testified that she was with the Petitioner for two nights at the motel, on the nights of two of the three robberies (February 26-27).  Furthermore, Ms. Samuels testified that the Petitioner never left her side on those two nights.  As the Court of Appeal points out, the receipt "corroborates only the motel's identity, not whether Miller [Petitioner] left her side.  Because of the minuscule value of the receipt, and its potential harm to the veracity of Samuels's testimony, it is not reasonably probable Miller [Petitioner] would have obtained a more favorable result had the receipt been introduced into evidence." [Lodgement 11 at 11].

Having correctly applied the *Strickland* to the facts, it cannot be concluded that the Court of Appeal's decision was contrary to or an unreasonable application of clearly established federal law.  Therefore, the ineffective assistance of counsel claim stemming from the failure to introduce the motel receipt as corroborating evidence must be DENIED.

**III.    Failure To Prevent Testimony Of Petitioner's Parole Status Was Not Contrary To Or An Unreasonable Application Of *Strickland***

Petitioner claims that his counsel was ineffective by failing move in limine, to object, or to request curative instructions regarding testimony of his status as a parolee.  California courts have held that "mere failure to object to evidence or argument seldom establishes counsel's incompetence. . . Counsel may well have tactically assumed that an objection or request for admonition would simply draw closer attention to the prosecutor's isolated comments."  *People v. Ghent* 43 Cal. 3d 739, 772 (1987) (internal citations omitted).

Petitioner's parolee status was raised during the testimony of the arresting officer.  When asked about why the Petitioner was detained at the time of a traffic stop, the arresting officer stated, "[Miller] was detained for his parole violation and for a misdemeanor warrant which was in the system on him . . . and he was detained for the robbery." [Lodgement 11 at 15 fn.7].  There was no further discussion as to the Petitioner's status as a parolee nor was the fact raised to the jury in any closing argument.  As the Court of Appeal found, the record is silent as to why counsel failed to object, move to strike, seek a curative instruction, or to move for a mistrial based on the testimony of the officer. [Lodgement 11 at 15-16].  However, the Court of Appeal found that "there [was] no showing that these omissions constitute ineffective assistance of counsel because defense counsel frequently withhold objections as a tactical matter to avoid

1  highlighting the evidence." [Lodgement 11 at 15].  The Court further reasoned that the Petitioner had not

2  met his burden of showing that the evidence as presented was so prejudicial that it was probably affected

3  the verdict. [Lodgement 11 at 16].

4       The Court of Appeal considered the evidence in light of *Strickland* and concluded that the jury

5  decision would not be influenced to a degree to shift the outcome.  Therefore, by properly applying

6  *Strickland*, it cannot be concluded that the Court of Appeal's decision was contrary to or an unreasonable

7  application of a clearly established federal law.  The ineffective assistance of counsel claim based on the

8  failure to prevent the testimony of the Petitioner's parolee status must be DENIED.

9  **IV.   Failure To Utilize A Third-Party Culpability Defense Was Not Contrary To Or An**

10         **Unreasonable Application *Strickland***

11       Petitioner alleges his counsel was ineffective by failing to investigate and present a third-party

12  culpability defense to the jury.  As stated by the Court of Appeal,

13         "The admissibility of third party culpability evidence is

       determined in accordance with [California] Evidence Code

14         sections 350 and 352: if the evidence is relevant, it is admissi-

       ble unless its probative value is substantially outweighed by

15         the risk of undue delay, prejudice or confusion of the jury.

       (*People v. Lewis* (2001) 26 Cal. 4th 334, 372.).  In a criminal

16         case, the defendant is entitled to present evidence of third

       party culpability for the charged offense provided the evi-

17         dence is sufficient to create a reasonable doubt as to his guilt.

       (*Ibid.*)  However, evidence that a third party merely had a

18         motive or an opportunity to commit the charged offenses,

       without more, does not create a reasonable doubt about the

19         defendant's guilt; rather, the defendant must present direct

       evidence or circumstantial evidence linking the third person

20         to the actual perpetration of the crime. (*Ibid*., citing *People v.*

       *Hall* (1986) 41 Cal. 3d 826, 833.)" [Lodgement 11 at 11-12

21         fn. 5]

22       Petitioner's assertion as to the presence of evidence of third-party culpability is misguided.

23  Petitioner's Deputy Public Defender (first counsel) was forced to recuse due to a potential conflict of

24  interest based on his assumption that there was a criminal investigation into four other robberies in the area

25  as well as the three in which the Petitioner was charged, in which a possible suspect was a client of his

26  office.  If the Deputy Public Defender was to raise the third party culpability defense, he would be

27  jeopardizing a former or current client. However, the factual background flushed out by the Court of Appeal

28

05cv1740

1    shows that there was only one investigation into all the robberies, to which the Petitioner was the sole

2    suspect. [Lodgement 11 at 12-13].

3         Furthermore, Petitioner's trial counsel was aware of a third party culpability defense that had been

4    suggested by Petitioner's Deputy Public Defender, but as a tactical decision determined not to raise the

5    defense.  Petitioner's counsel was afraid that the introduction of the uncharged offenses into the record

6    would open the door for an identification of the Petitioner as the suspect of the four other robberies and

7    therefore concluded it was more harmful to the Petitioner if he were to raise the defense.  As the Court of

8    Appeal concluded, "If Noble [Petitioner's counsel] had tried to show that police were investigating another

9    suspect in the uncharged robberies, there was a danger a witness would make an in-court identification of

10   Miller as the perpetrator of one or more of those offenses (thereby strengthening the case on the charged

11   offenses) and circumstantial evidence that tied Miller to those uncharged robberies would become

12   admissible." [Lodgement 11 at 14].

13        The Court of Appeal reasonably concluded that this tactical decision did not prejudice the

14   Petitioner's defense and thus does not rise to the level of ineffectiveness. *Strickland*, 466 U.S. at 694.  By

15   making a finding that is consistent with *Strickland*, it cannot be concluded that the Court of Appeal's

16   decision is contrary to or an unreasonable application of clearly established federal law.  Therefore, the

17   assertion that Petitioner's counsel was ineffective for failing to raise a third-party culpability defense must

18   be DENIED.

19   **V.    Cumulative Effect of Deficiencies**

20        Petitioner argues that the cumulative effect of the trial counsel's deficiencies prejudiced the outcome

21   of his trial. [Petition]. Yet, Petitioner failed to prove that any one of these failures by trial counsel amounted

22   to prejudicial ineffectiveness.  Thus, taken together the cumulative effect of trial counsel's conduct cannot

23   be considered  prejudicial. *Harris ex. Rel. Ramseyer  v. Wood,* 64 F. 3d 1432, 1438 (9th Cir. 1995).  The

24   Court of Appeal's finding that Petitioner did not receive ineffective assistance of counsel is reasonable and

25   not contrary to clearly established federal law and thus should be upheld.

26   **VI.   Conclusion**

27        In conclusion, Petitioner has failed to demonstrate that the state court's adjudication of his

28   ineffective assistance of counsel claim was contrary to or an unreasonable application of applicable United

States Supreme Court law.  Nor was it based upon an unreasonable determination of the facts. The state court's adjudication was a reasonable determination of the facts, based upon the evidence presented. Specifically, as the Respondent claimed trial counsel's actions can reasonably be viewed tactical decisions made in the client's best interests.  The Court of Appeal properly determined that trial counsel's actions did not rise to the level of ineffectiveness.  As such, the state court properly followed precedent established in *Strickland*.

### *Conclusion*

For the reasons set forth herein, it is recommended that Petitioner's Habeas Corpus Petition be **DENIED**.  This report and recommendation will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. §636(b)(1)(1988).  Any party may file written objections with the court and serve a copy on all parties by ***September 26, 2006.*** The document should be captioned "Objections to Report and Recommendation."  Any reply to the objections shall be served and filed by ***October 10, 2006.***  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Y1st*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

DATED:  September 8, 2006

_____
Hon. Anthony J. Battaglia
U.S. Magistrate Judge
United States District Court

12

05cv1740